**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT ELKINS**

**MARY LOU SMITH, et al.,**

    **Plaintiffs,**

**v.**                        **CIVIL ACTION NO. 2:06-0014**

**HONORABLE ANDREW N. FRYE, JR.,**

    **Defendant.**

### MEMORANDUM OPINION

Pending before the court is defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 7).[1] Plaintiffs filed a response to defendant's motion, and this motion is now ripe for adjudication. Having reviewed the record and applicable case law, by accompanying Judgment Order, defendant's motion to dismiss (Doc. No. 7) is hereby granted. The Clerk is directed to strike this case from the active docket of the court.

### A. Factual Background

In November 2002, plaintiff Mary Lou Smith was hired as the Clerk of the Magistrate Court of Mineral County, West Virginia. (See Doc. No. 1 ¶ 7.) In that position, Mary Lou Smith was under defendant's supervision in his capacity as the Chief Judge of the

---

[1] Also pending before the court is plaintiffs' motion for leave to file a surreply. (See Doc. No. 11.) For reasons appearing to the court, plaintiffs' motion for leave to file a surreply (Doc. No. 11) is granted, and the court will consider plaintiffs' surreply in evaluating defendant's motion to dismiss.

21st Judicial Circuit of West Virginia. (See id. ¶ 8.) Mary Lou Smith avers that, as of January 2004, defendant had never told her, or anyone else, that he had concerns about her work, and that no complaints about her performance had been made by anyone. (See id. ¶¶ 14-15.)

On January 30, 2004, plaintiff Greg Smith filed to run for the position of Circuit Clerk in the upcoming Republican Party primary against the incumbent Circuit Clerk of Mineral County. (See id. ¶ 10.) Greg Smith is Mary Lou Smith's oldest son and was thirty years old as of that time. (Id.) Plaintiffs aver that, after Greg Smith filed candidacy papers, defendant told another judge that he wanted to fire Mary Lou Smith because her son had filed for the office of circuit clerk. (Id. ¶ 12.) Moreover, according to this other judge, defendant was angry at Mary Lou Smith because of her son's candidacy. (Id. ¶ 13.)

Defendant terminated Mary Lou Smith as of February 5, 2004. (See id. ¶¶ 16-17.) Plaintiffs contend that Mary Lou Smith was fired because defendant believed that Mary Lou Smith would support her son, and not the incumbent circuit clerk in the upcoming election. (Id. ¶ 18.)

Following her termination, Smith requested a hearing under the personnel policies of the West Virginia Supreme Court of Appeals. (Id. ¶ 19.) Plaintiffs indicate that the hearing is provided by the Supreme Court in the court's capacity as an

employer, and that the hearings are not judicial proceedings.
(Id. ¶ 21.)  At this hearing, defendant insisted that he had no
reason whatsoever for firing Mary Lou Smith.  (Id. ¶ 26.)
Defendant's statements were opposed by those of the other judge
who testified that defendant had said that he was going to fire
Mary Lou Smith because her son had filed for the primary election
against the incumbent circuit clerk.  (Id. ¶ 24.)  Defendant
responded to the other judge's testimony with only the assertion
that he did not recall any such conversation.  (Id. ¶ 25.)

The hearing officer concluded that Mary Lou Smith would not
have been discharged had her son not become a candidate for
circuit clerk, but that her discharge did not violate state or
federal law.  (See id. ¶ 29.)  Mary Lou Smith disagreed with this
conclusion following the hearing, and continued to disagree with
it at the time the Complaint was filed.  (Id. ¶ 30.)  Following
several further levels of administrative review, Mary Lou Smith's
discharge was upheld by the Supreme Court of West Virginia.  (See
id. ¶¶ 38-39.)

In his motion to dismiss, defendant contends that plaintiff
Greg Smith's claims against him should be denied because either
Greg Smith suffered no "injury in fact" or because his injuries
are de minimis.[2]  (See Doc. No. 7 at 15-19.)  Defendant contends

---

[2]  Defendant also contended that, insofar as plaintiffs
asserted claims against him in his official capacity, any such
claims were barred by the Eleventh Amendment to the United States

that plaintiff Mary Lou Smith's claims are barred by the doctrine of qualified immunity, that her claims fail to state a claim for wrongful discharge or retaliation based upon the violation of a substantial public policy, and that her claims are barred under principles of claim preclusion as they were already addressed by the West Virginia Supreme Court of Appeals. (Id. at 9-15, 19-21.) The court later examines defendant's arguments in turn.

## B. Standard of Review

Defendant has moved for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To succeed on a motion to dismiss under Rule 12(b)(6), defendants must demonstrate that plaintiffs' claims are "so insubstantial, implausible, foreclosed by prior decisions of the [Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998). Dismissal is appropriate where plaintiffs can prove no set of facts that would support their claims. Flood v. New Hanover County, 125 F.3d 249, 257 (4th Cir. 1987).

A Rule 12(b)(6) motion tests the sufficiency of the pleading. It does not resolve factual disputes, "the merits of a claim, or the applicability of defenses." Republican Party of

---

Constitution. (See Doc. No. 7 at 4-5.) In their response, plaintiffs indicated that their claims were against defendant in his individual capacity. (See Doc. No. 9-1 at 8.) As such, the portion of defendant's motion to dismiss discussing Eleventh Amendment immunity and official capacity must be denied as moot.

North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)

(citations omitted). In considering the motion, the claims must

be viewed in the light most favorable to the non-moving party and

all allegations in the complaint accepted as true. Id.

Dismissal is appropriate only when it appears beyond a doubt that

no set of facts would entitle the pleader to relief. Conley v.

Gibson, 355 U.S. 41, 45-46 (1957).

## C. Analysis

### 1. Defendant's Motion to Dismiss regarding Greg Smith

#### a. Claims under 42 U.S.C. § 1983

Under Article III of the United States Constitution, it is a

well-settled principle that "a plaintiff must assert his own

legal rights and interests, and cannot rest his claim to relief

on the legal rights or interests of third parties." Warth v.

Seldin, 422 U.S. 490, 499 (1975). It is incumbent upon every

plaintiff to establish standing to prosecute a civil action. Elk

Grove School Dist. v. Newdow, 542 U.S. 1, 11 (2004). "In essence

the question of standing is whether the litigant is entitled to

have the court decide the merits of the dispute." Warth, 422

U.S. at 498. Particularly, the elements of standing include

three elements:

> First, a plaintiff must demonstrate an "injury
> in fact," which is "concrete," "distinct and
> palpable," and "actual or imminent." Second,
> a plaintiff must establish "a causal
> connection between the injury and the conduct

> complained of - the injury has to be 'fairly
> traceable to the challenged action of the
> defendant, and not . . . the result [of] some
> third party not before the court." Third, a
> plaintiff must show the "'substantial
> likelihood' that the requested relief will
> remedy the alleged injury in fact."

McConnell v. FEC, 540 U.S. 93, 225-26 (2003).

It is clear that plaintiff Greg Smith does not have standing
to contest damages resulting from the major issue present in this
case, that is, his mother's dismissal from her job as a
magistrate clerk in Mineral County, West Virginia. He cannot sue
to get her job back; she has to do this herself.

In his motion to dismiss, defendant avers as much; he
contends that Greg Smith has either suffered no actual injury, or
that the injuries he suffered were de minimis.[3] (Doc. No. 7 at
9-15.) Defendant contends that Greg Smith cannot allege that his
candidacy was affected in any concrete way by the termination of
his mother's employment, and that a "speculative and subjective
claim of 'chilling' of his [political] rights" is insufficient to
confer standing upon Greg Smith. (Id. at 16.) In response, Greg
Smith avers that he has standing to assert the claims raised in
the Complaint because "a person of ordinary firmness would be

---

[3] As defendant notes, "a trivial or de minimis injury will
not support a retaliatory prosecution claim." Poole v. Otero,
271 F.3d 955, 960 (10th Cir. 2001), overruled in part by Hartman
v. Moore, 126 S. Ct. 1695, 1701 (2006). However, a review of the
entirety of the Poole decision leads to the conclusion that,
insofar as the general contours of retaliation are concerned, any
injury that causes "chilling" is not de minimis.

-6-

chilled from exercising his rights, where, as here, the state

employment of his close relative was terminated because he filed

to fun for political office." (See Doc. No. 9 at 15) (discussing

Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d

474, 498 (4th Cir. 2005)). Under Fourth Circuit precedent, "for

purposes of a First Amendment retaliation claim under § 1983, a

plaintiff suffers adverse action if the defendant's allegedly

retaliatory conduct would likely deter 'a person of ordinary

firmness' from the exercise of First Amendment rights."

Constantine, 411 F.3d at 500 (listing cases from other circuits).

In Constantine, the Fourth Circuit noted that the "ordinary

firmness" standard is objective.

> We have never held that a plaintiff must
> prove that the allegedly retaliatory conduct
> caused her to cease First Amendment activity
> altogether. The cause of action targets
> conduct that tends to *chill* such activity,
> not just conduct that *freezes* it completely.
> Moreover, such a subjective standard would
> expose public officials to liability in some
> cases, but not in others, for the very same
> conduct, depending on the plaintiff's will to
> fight. We believe that an objective standard
> better instructs public officials as to the
> obligations under the First Amendment.

Id.

Plaintiffs argue that West Virginia recognizes that the

right to run for public office is a valuable and fundamental

right, and that retaliatory actions of the sort defendant is

alleged to have taken, would "certainly chill a person of

ordinary firmness from exercising his right to file for public office." (See Doc. No. 9 at 17.) Greg Smith contends that he does not have to show actual effects of defendant's allegedly unconstitutional conduct. (Id.) Alternatively, Greg Smith contends that compensatory damages in a retaliation claim under § 1983 may include embarrassment, humiliation, and emotional distress, and that he suffered such damages, and that these damages fulfill the "injury in fact" requirement. (See id. at 18) (citing Bloch v. Ribar, 156 F.3d 673, 679 (6th Cir. 1998) (collecting authorities on the issue of compensable issues in § 1983 retaliation cases)). As such, defendant's motion to dismiss based on Greg Smith's standing and ostensibly de minimis injuries must be denied.

In response, defendant contends that Greg Smith must show a concrete or particularized injury to his own personal legal rights before his claims are allowed to proceed. (See Doc. No. 10 at 10.) Assuming the truth of the allegations in the Complaint, defendant argues, only Mary Lou Smith was injured in a legal sense by defendant's actions. (Id.) Defendant's right to be a candidate for public office was not adversely affected in any way. (Id.) On this basis, defendant distinguishes this case from Constantine where a plaintiff who publicly criticized a law school professor's grade appeal policies was also the same person who had to retake an exam. (Id.) Defendant also distinguishes

-8-

<u>Bloch v. Ribar</u> based on facts. (<u>Id.</u>) In <u>Bloch</u>, a sheriff "publicly revealed the extremely humiliating details of a rape after the victim publicly criticized him for failing to conduct an appropriate investigation." (<u>Id.</u>)

The court accepts defendant's arguments regarding Greg Smith nearly in their entirety. Greg Smith cannot have standing based solely on the assertion that his political rights were ostensibly "chilled." Similarly, he has not alleged an injury in fact for a actual injury that was, in reality, inflicted entirely upon his mother. She lost her job; his candidacy continued. For Greg Smith to have standing, he would have to be injured in a some way recognized by the law that is independent of his mother's injury. Here, Greg Smith contends that he was injured because his mother's discharge caused him to suffer indignity, embarrassment, humiliation, and emotional distress. Common law principles bar such claims as he has alleged here from succeeding.

It is an age-old principle in tort law that one cannot collect for emotional damage or humiliation occasioned by harm done to a family member absent fairly particular circumstances.[4]

---

[4] Under West Virginia law, a third party may recover for intentional infliction of emotional distress damages if:

> (1) defendant's conduct was extreme and
> outrageous; (2) such conduct was directed at
> the third party; (3) the plaintiff is a
> member of the third party's immediate family;
> (4) the plaintiff was physically present when
> the extreme and outrageous conduct took

Although Greg Smith's claim has a constitutional basis, it is at its root a tort. The Restatement (Second) of Torts § 46, comment (1), notes that it is important to limit the scope of persons who can recover damages for emotional distress caused by intentional actions. Specifically, the Restatement notes that the trend in decided cases is that liability for intentional infliction of emotional distress

> is limited . . . to plaintiffs who were
> present at the time, as distinguished from
> those who discover later what has occurred.
> The limitation may be justified by the
> practical necessity of drawing the line
> somewhere, since the number of persons who
> may suffer emotional distress at the news of
> an assassination of the President is
> virtually unlimited, and the distress of a
> woman who is informed of her husband's murder
> ten years afterward may lack the guarantee of
> genuineness which her presence on the spot
> would afford.

Id.

The court can see no reason why this general principle in tort law is inapplicable in this case. Allowing an adult son to collect for emotional damages and humiliation resulting from his mother's discharge from her employment casts the net of possible

---

place; (5) the plaintiff suffered severe
emotional distress as a result of the
conduct.

See, e.g., Courtney v. Courtney, 186 W. Va. 597, 601, 413 S.E.2d
418, 422 (1991). Although it is clear that this is not
determinative for plaintiff's cause of action here, it is
illustrative of the fact that emotional damages resulting from
tortious conduct are difficult to receive.

-10-

liability too broadly. A party can only collect damages for their own discharge, and not for the discharge of a family member or ostensible political supporter. If one were to follow Greg Smith's argument to its logical conclusion, someone would be able to collect on a tort inflicted on his family member. This cannot happen. The court finds that plaintiff Greg Smith's allegations that he suffered indignity, embarrassment, humiliation, and emotional distress as a result of his mother's unlawful termination are not a sufficient "injury in fact" under Article III of the United States Constitution.

Bloch v. Ribar, 156 F.3d 673, 679 (6th Cir. 1998), upon which plaintiff relies to show that he has suffered an "injury in fact," is distinguishable on its facts from this case. In Bloch, the plaintiff sued for emotional damages and humiliation that occurred to her. See 156 F.3d at 676. Although Bloch collects cases and has been cited approvingly by the Fourth Circuit, nothing in it stands for the proposition that a party can claim damages based on emotional damage or humiliation that has occurred resulting from harms occurring to a family member. See Jennings v. Univ. of N.C., 444 F.3d 255, (4th Cir. 2006) (citing Bloch for the proposition that being forced to reveal information regarding sexual conduct may implicate a person's interest in avoiding the disclosure of personal matters); Constantine v. Records & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th

Cir. 2005) (same). Similarly, no decision of which the court is aware has awarded damages for emotional harm or humiliation to the family member of a person who was unconstitutionally discharged. The principle distinguishing this case from every other case this court has reviewed is Greg Smith's position as a third party.

The combination of Smith's status as son and political candidate, although exceedingly troubling, does not provide enough of a nexus to give him standing to sue here. As such, defendant's motion to dismiss Greg Smith's claims under 42 U.S.C. § 1983 must be dismissed.

### b. State Law Claims

Greg Smith also raises claims under state law. (<u>See</u> Doc. No. 1 ¶ 46.) Specifically, Greg Smith alleges that defendant's discharge of Mary Lou Smith, Greg Smith's mother, following his announcement of his candidacy for Mineral County Circuit Clerk violated his rights under West Virginia public policy and the West Virginia Constitution. These state law claims are only before the court pursuant to 28 U.S.C. § 1367, which grants this court supplemental jurisdiction over "all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" as the other claims that grant the court jurisdiction under Article III of the United States Constitution.

Although a court that has dismissed federal claims has the ability to retain jurisdiction over closely related state law claims, the court has the discretion to decline to exercise supplemental jurisdiction over claims outside its original jurisdiction. See 28 U.S.C. § 1367(c)(3); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) (stating that district courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state law claims when all federal law claims have been extinguished."). To determine whether to retain jurisdiction over state law claims, the court should consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Semple v. City of Moundsville, 195 F.3d 708, 714 (4th Cir. 1999).

Although the court finds the allegations contained in the Complaint regarding defendant's actions toward Greg Smith extremely troubling, the court declines to continue jurisdiction over Greg Smith's claims arising under state law. As such, the court orders these claims dismissed without prejudice.

## 2. Defendant's Motion to Dismiss regarding Mary Lou Smith

### a. Claim under 42 U.S.C. § 1983

The court moves to defendant's motion to dismiss regarding Mary Lou Smith. In his motion, defendant contends that plaintiff Mary Lou Smith's claims are barred by the doctrine of qualified

immunity, that her claims fail to state a claim for wrongful discharge or retaliation based upon the violation of a substantial public policy, and that her claims are barred under principles of claim preclusion as they were already addressed by the West Virginia Supreme Court of Appeals. (See Doc. No. 7 at 9-15, 19-21.)

Having examined these arguments and applicable case law, the court grants defendant's motion to dismiss as to Mary Lou Smith because defendant has failed to plead a claim upon which relief can be granted. Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate in such situations. See Flood v. New Hanover County, 125 F.3d 249, 257 (4th Cir. 1987). Federal courts have limited jurisdiction, possessing only the powers authorized by the United States Constitution and prescribed under statute. See Kolkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). Here, plaintiff avers that her rights under the First and Fourteenth Amendments of the United States Constitution were violated when defendant terminated her because her son chose to run for public office. (See Doc. No. 1 ¶ 45.) However, plaintiff does not allege that she took any action to support her son's candidacy, or that she exercised rights granted to her under the United States Constitution whatsoever. Her failure to allege that she exercised a constitutionally protected right is fatal to the claim she attempts to allege.

-14-

It is well settled that "a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142 (1983); see also Garcetti v. Ceballos, 126 S. Ct. 1951, 2006 U.S. LEXIS 4341, at *7 (U.S. May 30, 2006). A public employer contravenes an employee's First Amendment free speech rights when it discharges or "refuses to rehire [the] employee" or when it makes decisions relating to "promotion, transfer, recall, and hiring based on the exercise of" that employee's free speech rights. Ridpath v. Bd. of Governors Marshall Univ., 2006 U.S. App. LEXIS 11693, at *50-51 (4th Cir. May 11, 2006) (quoting Suarez Corp. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000) (internal quotation marks omitted)). In order to prove that a retaliatory employment action violated a public employee's free speech rights, the employee must satisfy the three-prong test laid out in McVey v. Stacy, 157 F.3d 271, 277-78 (4th Cir. 1998). Under McVey, first, the employee must speak out as a citizen, not as an employee, on a matter of public concern. Id. at 277. Second, the employee's interest in the expression at issue must have outweighed the employer's "interest in providing effective and efficient services to the public." Id. Third, there must have been a sufficient causal nexus between the protected speech and the retaliatory employment action. Id. at 277-78 n.26.

-15-

Here, there are no allegations that Mary Lou Smith ever said or did anything in support of her son's candidacy.[5] The Complaint alleges that defendant's actions were not to chill Mary Lou Smith's rights, but instead to chill the rights of her son. All of the case law surrounding retaliation claims under the First Amendment to the United States Constitution focuses on situations where an employee has already spoken out and exercised her constitutional rights, there is little guidance for situations where, as here, the retaliation happens before any statements, or associational conduct, ever happened. See Ridpath, 2006 U.S. App. LEXIS 11693, at *63 (listing cases where an employee was fired after having made statements that their employer disagreed with).

---

[5] Although the concern is entirely theoretical, it is also clear that plaintiff has no apparent, valid claim under the Equal Protection Clause. The Equal Protection Clause provides that "no State shall . . . deny to any persons within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. It is clear that a "pure or generic retaliation claim . . . simply does not implicate the Equal Protection Clause." See Edwards v. City of Goldsboro, 178 F.3d 231, 250 (4th Cir. 1999) (quoting Watkins v. Bowden, 105 F.3d 1344, 1354 (11th Cir. 1997)). Plaintiff's claim here is such a generic retaliation claim. The only plausible claim that plaintiff may have is that she is a member of a "class of one" who has been intentionally treated differently than other similarly situated persons, and that there is no rational basis for the difference in treatment. See, e.g., Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 446 (1923). However, plaintiff pleaded no such claim, and it would likely fail when confronted with plaintiff's status as an at will employee.

In her brief, plaintiff contends that an employer's

perception that an employee has engaged in protective speech is

enough to present a First Amendment retaliation claim.[6]  (See

Doc. No. 9 at 11 n.7.)  Plaintiff notes that:

> In other contexts courts have rejected
> similar defenses recognizing that the
> defendant's perception that plaintiff has
> engaged in protected activity is sufficient
> to state a cause of action.  See Fogelman v.
> Mercy Hosp., Inc., 283 F.3d 561, 565 (3d Cir.
> 2002) ("We also believe that [plaintiff's]
> perception theory of illegal retaliation -
> that he was fired because Mercy thought that
> he was engaged in protected activity, even if
> he actually was not - presents a valid legal
> claim.  Because the statutes forbid an
> employer's taking action against an employee
> for discriminatory reasons," it does not
> matter that the factual basis for the
> employer's discriminatory animus was correct
> and that, so long as the employer's specific
> intent was discriminatory, the retaliation is
> actionable.");  Grosso v. City Univ., 2005
> U.S. Dist. LEXIS 4089, at *9 (S.D.N.Y. Mar.
> 14, 2005) ("Defendants provide no authority
> that holds the perception theory of
> retaliation is invalid.  Moreover, we find
> that the language of 42 U.S.C. § 2000e-3(a)
> is consistent with the 'perception theory' of
> retaliatory discrimination.  Thus, we believe
> plaintiff states a valid claim for
> retaliatory discrimination based on culpable
> behavior before plaintiff engaged in
> protected activity to the extent that the
> behavior was motivated by their belief that
> plaintiff had already done so.").

(Id.)

---

[6]  Plaintiff refers to this as "defendant's mistake of fact
defense."  As will be discussed herein, it is not defendant's
defense, but that plaintiff has pleaded essentially a "preemptive
retaliation" claim.

As plaintiff notes, neither Fogelman nor Grosso are First

Amendment retaliation cases. They are both premised on the

language of particular statutes, neither of which is

42 U.S.C. § 1983, the statutory basis here. In Fogelman, after a

father filed a separate action alleging that he was forced out of

his job due to age and disability discrimination, a son, who

worked for the same employer, raised claims under the Americans

with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, the Age

Discrimination in Employment Act, 29 U.S.C. §§ 621-634, and the

Pennsylvania Human Rights Act, 43 Pa. Cons. Stat. §§ 951-963,

alleging that he had been fired in retaliation for the action

filed by his father. See 283 F.3d at 564. To reach its eventual

conclusion, the Third Circuit construed the language of the three

statutes plaintiff sued under, and found that certain language in

the ADA permitted plaintiff to file suit. See id. at 564, 570-

51.[7] However, the court found that, because of the phrasing of

_____

[7] The relevant portion of the ADA, 42 U.S.C. § 12203(b),
provides that

> It shall be unlawful to coerce, intimidate,
> threaten, or interfere with any individual in
> the exercise or enjoyment of, or on account
> of his or her having exercised or enjoyed, or
> on account of his or her having aided or
> encouraged any other individual in the
> exercise or enjoyment of, any right granted
> or protected under this chapter.

The Third Circuit specifically noted that it was construing
this section in reaching its eventual conclusion that plaintiff's
suit under the ADA was permitted. See 283 F.3d at 561.

the other statutes plaintiff attempted to sue under, his causes
of action under them must be dismissed. Id. at 565-70.

Grosso also focuses on particular statutory language,
specifically 42 U.S.C. § 2000e-3(a). In Grosso, plaintiff
alleged that he was subjected to a hostile work environment for
assisting plaintiffs Drs. Gloria L. Salerno and Emelise Aleandri
in a Title VII action. See 2005 U.S. Dist. LEXIS 4089, at *5-6.
Plaintiff's theory was that defendants subjected him to a hostile
work environment because they believed he had engaged in a
protected action — even before he had actually done so. Id. at
*6. In resolving defendant's motion to dismiss, the court
examined Fogelman and the language of 42 U.S.C. § 2000e-3(a).[8]
See id. at *9-10.

---

[8]  It appears that the Grosso court actually misapplied
Fogelman as it states that Fogelman approved the involved
plaintiff's claims under both the ADA and the ADEA. See Grosso,
2005 U.S. Dist. LEXIS at *8-10 (discussing Fogelman, 283 F.3d at
561, 571). As noted above, in Fogelman, the Third Circuit only
allowed one ADA claim to continue. The Grosso court also relies
on the bald assertion that 42 U.S.C. § 2000e-3 is consistent with
a "perception theory" of retaliatory discrimination, without
providing any indication of where in that statute that theory has
its basis. See id. at *9.
    Sauers v. Salt Lake County, 1 F.3d 1122, 1128 (10th Cir.
1993), provides a more reasoned analysis of "preemptive
retaliation" under 42 U.S.C. § 2000e-3. The Sauer court makes it
clear, as did Fogelman, that "preemptive retaliation" claims must
have a statutory basis. Id. (stating that "[a]ction taken
against an individual in anticipation of that person engaging in
protected opposition to discrimination is no less retaliatory
than action taken after the fact; consequently, we hold that this
form of pre-emptive retaliation falls within the scope of 42
U.S.C. 2000e-3.").

-19-

Plaintiff's claim here sounds under 42 U.S.C. § 1983, alleging violations of her rights under the First and Fourteenth Amendments to the United States Constitution. (See Doc. No. 1 ¶ 45.) The court is aware of no authority supporting the proposition that a party can show a violation of her First or Fourteenth Amendment rights, actionable under 42 U.S.C. § 1983, without the party having engaged in some activity protected under the United States Constitution. In relevant part, Section 1983 provides that:

> Every person who . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id.

The language contained in this statute is far narrower than the language contained in statutes such as 42 U.S.C. § 12203(b) or 42 U.S.C. § 2000e-3 which have been used to allow claims based on "preemptive retaliation." That Mary Lou Smith never exercised any constitutionally guaranteed right prior to the termination of her employment is fatal to her claim given the language of 42 U.S.C. § 1983.[9] The conduct alleged in the Complaint does not

---

[9] Indeed, even if the language of 42 U.S.C. § 1983 were identical to 42 U.S.C. § 12203(b) or 42 U.S.C. § 2000e-3, her pleadings would not sound a claim. Under Section 12203(b), plaintiff would have had to plead that she "aided or encouraged"

sound a federal claim as to plaintiff Mary Lou Smith because

being a family member of someone who runs for office does not

appear to be protected under the United States Constitution, and

this is all she pleaded.[10]  As such, defendant's motion to

dismiss Mary Lou Smith's claims under 42 U.S.C. § 1983 must be

granted.

### b.  Claims under State Law

In her Complaint, plaintiff Mary Lou Smith also states

claims sounding under the laws of the State of West Virginia.

(See Doc. No. 1 ¶ 45) (stating, in part, that defendant's actions

violated plaintiff's rights under, Article III §§ 1,7, and 16 of

the West Virginia Constitution).  These state law claims are only

before the court pursuant to 28 U.S.C. § 1367, which grants this

---

her son to exercise his rights.  See id.  Similarly, Section
2000e-3 would require her to take some action such as making a
charge, or even assisting, a party to show a violation.  See 42
U.S.C. § 2000e-3(a); Jennings v. Tinley Park Cmty. Consol. Sch.
Dist., 796 F.2d 962, 966-67 (7th Cir. 1986) (stating that the
first element in a prima facie case of retaliatory discrimination
a plaintiff must show is that they engaged in a statutorily
protected form of expression).

[10] All of the retaliation cases under Section 1983 of which
this court is aware require a plaintiff to show that they engaged
in some form of protected activity before having a valid claim.
See, e.g., Elrod v. Burns, 427 U.S. 347, 350 (1976) (finding that
membership, or nonmembership in a political party was an activity
protected by the First Amendment); Rutan v. Republican Party, 497
U.S. 62, 64-65 (1990); Pike v. Osborne, 301 F.3d 182, 185 (4th
Cir. 202) (supporting another candidate implicated First
Amendment Rights); Sales v. Grant, 158 F.3d 768, 779 (4th Cir.
1998) (same).  There appears to be no authority that support of a
political candidate may be inferred from a familial relationship
with said candidate.

-21-

court supplemental jurisdiction over "all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" as the other claims that grant the court jurisdiction under Article III of the United States Constitution.

As the court noted above regarding Greg Smith, it has discretion to accept or reject the remaining claims against defendant alleged by Mary Lou Smith. These questions remaining include difficult issues of state law that are better handled by state courts. Indeed, this dispute has already once been before the West Virginia Supreme Court of Appeals, if in an administrative, and not a judicial capacity. The court believes that Mary Lou Smith's claims under public policies of the State of West Virginia and the West Virginia Constitution are better handled by the courts of the State of West Virginia. Although it is moderately troubling to this court that any state judge who hears this dispute will likely have a relationship with defendant, any judge whose relationship with defendant would cause an appearance of impropriety would recuse themselves. This provides no reason for this court to keep jurisdiction over the state claims averred in the Complaint. As such, pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise jurisdiction over these claims, and such claims are hereby dismissed without prejudice.

### D. Conclusion

For the reasons outlined above, defendant's motion to dismiss (Doc. No. 7) is hereby granted.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is SO ORDERED this 14th day of June, 2006.

Enter:

David A. Faber
United States District Judge